UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DIEGO FERNANDO CUERVO MARIN,

Petitioner(s),

v.

ICE FIELD OFFICE DIRECTOR,[1]

Respondent(s).

CASE NO. C26-1071-KKE

ORDER ON HABEAS PETITION

Petitioner, proceeding *pro se*, filed a petition for a writ of habeas corpus, asserting that his re-detention by Immigrations and Customs Enforcement ("ICE") without a hearing violated his right to due process.  Dkt. No. 4.  The briefing on Petitioner's habeas petition is now complete. Dkt. Nos. 4, 7, 10.

---

[1] In this case, Petitioner names as a respondent the "ICE Field Office Director" rather than the warden of the detention center where he is held.  The proper respondent for a habeas petition is the petitioner's immediate custodian or warden of the detention facility.  *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004).  Under Federal Rule of Civil Procedure 21, the Court may, "on its own," and "on just terms, add … a party."  Fed. R. Civ. P. 21.  Here, although Petitioner fails to name his immediate custodian, the petition clearly challenges his detention at and seeks release from the Northwest ICE Processing Center ("NWIPC").  Construing the petition liberally, as it must, the Court directs the Clerk to add Bruce Scott, Warden of the NWIPC, as a respondent in this action pursuant to Federal Rule of Civil Procedure 21.  *See, e.g.*, *Urena v. Warden, Otay Mesa Det. Ctr.*, 26-CV-323-JO-DDL, 2026 WL 362082 (S.D. Cal. Feb. 9, 2026) (court *sua sponte* adding detention center warden as a respondent "[g]iven Petitioner's *pro se* status and his clear indication that he seeks release from the Otay Mesa Detention Center" and assuming jurisdiction over habeas action); *Bailey v. Fulwood*, 780 F. Supp. 2d 20, 25 (D.D.C. 2011) (court *sua sponte* adding prison warden as "the proper respondent" in habeas action under Rule 21); *Devilmar v. U.S. Immigration & Customs Enf't ICE*, 3:26-CV-0009-JES-MSB, 2026 WL 130387, at *1 (S.D. Cal. Jan. 16, 2026) (declining to dismiss habeas petition for want of jurisdiction where petitioner failed to name detention center warden as a respondent "[i]n light of Petitioner's pro se status and the liberty interests at issue"); *Torres Munguia v. Attorney General*, 2:26-CV-1067-KG-GBW, 2026 WL 967363, at *1 n.1 (D.N.M. Apr. 9, 2026) (court *sua sponte* adding proper respondent and noting it "routinely substitutes" the "proper parties" as respondents in habeas actions under Rule 21).

ORDER ON HABEAS PETITION - 1

## I.    BACKGROUND

Petitioner Diego Fernando Cuervo Marin is a native and citizen of Colombia.  Dkt. No. 9 ¶ 3, Dkt. No. 10 at 1.  On January 5, 2025, Petitioner entered the United States through a port of entry in Brownsville, Texas.  Dkt. No. 9 ¶ 3, Dkt. No. 10 at 1.  The same day, Customs and Border Patrol ("CBP") processed Petitioner and served him with a Notice to Appear ("NTA") charging inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and scheduling a master calendar hearing for December 17, 2025.  Dkt. No. 9 ¶ 4, Dkt. No. 8-1.  Petitioner was subsequently released pursuant to an Order of Release on Recognizance ("OREC"), or "Form I-220A."[2]  Dkt. No. 9 ¶ 8, Dkt. No. 7 at 4, *see* Dkt. No. 8-3.  Upon his release from immigration custody, Petitioner, his wife, and his daughter settled in Yakima, Washington.  Dkt. No. 10 at 1.  While Petitioner was on release, ICE Enforcement and Removal Operations ("ERO") mailed Petitioner a "Call-in-Letter" directing him to report to the Yakima ERO office, but that form was returned as undeliverable.  Dkt. No. 9 ¶¶ 5–6.  The Government contends that Petitioner later failed to appear for an Alternatives to Detention ("ATD") appointment that had been scheduled for March 5, 2025.  Dkt. No. 9 ¶ 7; Dkt. No. 8-2 at 4.

On December 21, 2025, while conducting a targeted field operation, ICE ERO arrested and detained Petitioner, according to the Government, "under the mandatory detention provision for applicants for admission."  Dkt. No. 7 at 5 (citing 8 U.S.C. § 1225(b)), Dkt. No. 9 ¶ 8.  The same day, ERO issued a memorandum "cancelling" Petitioner's OREC, citing the "reasons stated in the Form I-213."  Dkt. No. 9 ¶ 8.  The Form I-213—which appears to have been completed on the same date of his arrest—includes a list of events that occurred on the date of Petitioner's arrest, as

---

[2] The Government does not provide a copy of the OREC.  Based on ICE ERO's memorandum cancelling Petitioner's OREC, it appears as though Petitioner's OREC may no longer be accessible by ICE.  *See* Dkt. No. 8-3 ("This memo has been created because the [OREC] is not immediately available to complete and serves as notice of cancellation … in lieu of completing the cancellation portion of the [OREC] form itself.").

ORDER ON HABEAS PETITION - 2

well as Petitioner's answers to questions he was asked by a deportation officer. *See* Dkt. No. 8-2 at 2–5. For instance, when asked whether he had reason to believe that he is a citizen of the United States, Petitioner allegedly answered "No." *Id.* at 4. Under the header "Immigration History," the form notes that he failed to report to a single ATD appointment on March 5, 2025. *Id.* The I-213 form also states that, upon his arrival in the United States, Petitioner was "paroled into the United States pending a [section] 240 [of the INA] hearing." *Id.* Petitioner has no criminal history. *Id.*

Petitioner was transferred to the NWIPC where he remains detained, according to the Government, under the mandatory detention scheme provided by 8 U.S.C. § 1225(b). Dkt. No. 9 ¶ 9, Dkt. No. 7 at 5. Though the Government claims Petitioner requested voluntary departure on December 27, 2025 and again on January 15, 2026, Dkt. No. 9 ¶¶ 10, 12, in a declaration filed in support of his reply, Petitioner asserted otherwise. *See* Dkt. No. 11. Petitioner stated his intent to "clarify" communications he had with ICE while he was detained, and expressed:

> I do not wish to renounce my legal rights, my asylum claim, or my habeas corpus petition. I remain committed to continuing my legal process … I am afraid of being removed from the United States and sent to my country of origin or to any other country where my life may be in danger.

Dkt. No. 11 at 1. He asked "that the Court not interpret [his] prior communication as a voluntary waiver of [his] rights or as an intention to abandon [his] case," and explained that his communications with ICE were owing to "extreme emotional distress, desperation, and frustration due to prolonged and unjust detention, as well as the separation from [his] wife and daughter." Dkt. No. 11 at 1.

On March 3, 2026, Petitioner appeared for a hearing in his removal proceedings; the IJ ordered him removed to Ecuador and Honduras. Dkt. No. 9 ¶ 13. Petitioner filed an appeal, which remains pending. *Id.* ¶¶ 14–15, Dkt. No. 4 at 2, Dkt. No. 10 at 1.

## II.    ANALYSIS

### A.    Legal Standard

"Writs of habeas corpus may be granted by … the district courts …within their respective jurisdictions."  28 U.S.C. § 2241(a).  To succeed on his petition, Petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  8 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### B.    Petitioner is Detained Under § 1226.

The Court considers a threshold question of whether Petitioner is detained under 8 U.S.C. § 1225(b), as the Government contends, or under § 1226(a), as Petitioner asserts.  Dkt. No. 7 at 5–6, Dkt. No. 4 at 3.

Two sections of the INA govern the detention of noncitizens pending removal proceedings: 8 U.S.C. § 1225 and § 1226.  Under 8 U.S.C. § 1225, a noncitizen "who has not been admitted or who arrives in the United States … shall be deemed for purposes of this chapter an applicant for admission."  8 U.S.C. § 1225(a)(1).  Applicants for admission fall into two sub-categories, though detention is mandatory for both.[3]  Noncitizens who are subject to mandatory detention may only be released on "parole into the United States temporarily … only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]"  8 U.S.C. § 1182(d)(5)(A); *see Jennings*, 583 U.S. at 288.  Once the purposes of parole are achieved, however, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the

---

[3] Applicants for admission fall into one of two categories.  Section 1225(b)(1) applies to noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," 8 U.S.C. § 1225(b)(1), while section 1225(b)(2) serves as a "catchall provision" that applies to all other applicants not covered by section (b)(1), 8 U.S.C. § 1225(b)(2).  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

United States." *Id.*  8 U.S.C. § 1226, on the other hand, establishes a discretionary detention framework and is the "default rule" for detaining and removing noncitizens who are "already present in the United States." *Jennings*, 583 U.S. at 303.  Under § 1226(a), for a noncitizen who is "arrested and detained" "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole."  8 U.S.C. §§ 1226(a)(1)–(2).  "Release on recognizance" is "another name for 'conditional parole' under § 1226(a)[.]"  *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007).

Even where, as here, the Government detains a noncitizen upon arrival, "if he has been treated by [the government] as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225, the former is more likely to apply."  *Bello Chacon v. Hermosillo*, 2:25-CV-02299-TMC, 2025 WL 3562666, at *2 (W.D. Wash. Dec. 12, 2025) (quoting *Romero v. Hyde*, 797 F. Supp. 3d 271, 281 (D. Mass. 2025)).

Here, the Government has treated Petitioner as subject to discretionary detention under § 1226(a).  Though the Government asserts that Petitioner was "paroled into" the United States under 8 U.S.C. § 1182(d)(5)(A), they provide no documentary evidence of Petitioner's purported release on humanitarian parole.  *See* Dkt. No. 8.  Indeed, here, as in *Ortega-Cervantes*, "[n]one of the forms issued to [Petitioner] makes any reference whatsoever to 'parole into the United States' under § 1182(d)(5)(A), and immigration officials did not issue [Petitioner] an I-94 card, which is typically given to § 1182(d)(5)(A) parolees."  501 F.3d at 1115.  Instead, the factual record before the Court supports that Petitioner was released on *conditional* parole (or, on his own recognizance) under § 1226(a).  Tellingly, the Memorandum of Cancellation of Petitioner's OREC references a "Form I-220A" which, at the time of its cancellation, was inexplicably "not immediately available to complete."  Dkt. No. 8-3 at 2.  Although the Government did not produce Petitioner's Form I-

ORDER ON HABEAS PETITION - 5

220A/OREC, courts have observed that a Form I-220A/OREC "premises [] release on section 1226" by referencing "section 236 of the Immigration and Nationality Act." *See, e.g.*, *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025); *Ortega-Cervantes*, 501 F.3d at 1112.  Because the Government does not provide Petitioner's Form I-220A, the Court finds instructive, and takes judicial notice of, ICE's sample Form I-220A which states: "You have been arrested and placed in removal proceedings.  In accordance with section 236 of the Immigration and Nationality Act and applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance[.]"  *Form I-220A*, U.S. IMMIGRATION & CUSTOMS ENFORCEMENT, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf [https://perma.cc/4E47-3DUJ]. Thus, Petitioner's release on a Form I-220A OREC—and his re-detention based upon cancellation of that form—supports that the Government has treated him as detained under § 1226(a), not § 1225(b).

In support of their return, the Government submits the declaration of ICE Deportation Officer Kurtis E. Reed.  Dkt. No. 9.  Nowhere in that declaration does Officer Reed state that Petitioner was paroled into the United States under the humanitarian parole statute, § 1182(d)(5)(A); he does, however state that Petitioner was issued an OREC on "Form I-220A." Dkt. No. 9 ¶ 8.  Moreover, humanitarian parole is granted only on a temporary basis under § 1182(d)(5)(A) and is terminated only after the Secretary of Homeland Security has determined the purposes of that parole have been served.  8 U.S.C. § 1182(d)(5)(A); *Biden v. Texas*, 597 U.S. 785, 806 (2022) (explaining that DHS's authority to grant humanitarian parole is "not unbounded" because "DHS may exercise its discretion to parole applicants 'only on a case-by-case basis for urgent humanitarian reasons or significant public benefit'" (quoting 8 U.S.C. § 1182(d)(5)(A)). Here, even if Petitioner had been granted humanitarian parole (which the record does not reflect), there is no evidence of any determination that the purposes of said parole were served such that it

ORDER ON HABEAS PETITION - 6

was terminated, nor any basis (such as a documented expiration date) on which his parole would terminate automatically.  *See* 8 C.F.R. § 212.5(e)(1); 8 U.S.C. § 1182(d)(5)(A).

The Form I-200 Arrest Warrant also indicates that Petitioner is subject to detention under § 1226(a), as it expressly references arrest authority under § 1226.  *See* Dkt. No. 8-3 at 3; *see Ortega-Cervantes*, 501 F.3d at 1115 (finding petitioner's arrest pursuant to a warrant, among other things, supported finding that petitioner was conditionally paroled, or released on recognizance, "under the authority of § 1226(a)").

In sum, the record supports that § 1226(a) governs Petitioner's detention.

**C.      Petitioner's re-detention violates due process.**

In this case, Petitioner contends that his arrest and re-detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution (Dkt. No. 4 at 1, 4–6), which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

1.  Petitioner has a protected interest in his liberty.

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner was arrested and remains in custody undoubtedly presents a deprivation of Petitioner's interest in his liberty. *See Dejesus v. Bostock*, No. 25-CV-01427-JHC-TLF, 2025 WL 3268002, at *3 (W.D. Wash. Nov. 24, 2025). Here, Petitioner was arrested on January 5, 2025 and subsequently released on his own recognizance. Dkt. No 9 ¶¶ 3–4, 8. "When [Petitioner] was released from his initial detention…, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)). Though the Government suggests this interest is "sharply limited" because his "prior release was purely discretionary and conditional," it provides no documentation of the conditions of Petitioner's release or whether Petitioner was aware of those conditions. Dkt. No. 7 at 8. Further, "[t]hat the express terms of the [OREC] allowed for discretionary termination … does not somehow obviate the need for the Government to provide [an] individualized hearing prior to re-detaining [him]." *Ramirez Tesara*, 800 F. Supp. 3d at 1136 (citing *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)).

Accordingly, the first *Mathews* factor favors Petitioner.

ORDER ON HABEAS PETITION - 8

2.  The risk of erroneous deprivation of liberty is high.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the risk of erroneous deprivation of Petitioner's liberty interest in the absence of a pre-detention hearing is high.

As described earlier in this order, Petitioner was arrested and detained during a 2025 targeted enforcement operation, though there is little documentation explaining the reason for his re-detention apart from a single reference to Petitioner's failure to report to a scheduled ATD appointment on March 5, 2025. *See* Dkt. No. 8-2 at 4. The Government argues that Petitioner's re-detention was statutorily authorized under § 1225(b) and 1182(d)(5)(A), undermining the risk of any erroneous deprivation—but Petitioner is not subject to mandatory detention. Dkt. No. 7 at 8. The Government argues in the alternative that Petitioner's removal proceedings, which concluded on March 3, 2026, "reduce[] the risk of error[.]" *Id.* But the Government cites no authority to support its proposition, and the Court is unpersuaded that a hearing on the merits of Petitioner's removal is an adequate substitute for a pre-deprivation hearing on Petitioner's custody status. This is especially so when multiple courts in this District have held that the Government violates due process when a noncitizen is placed in removal proceedings, released on their own recognizance, then is re-detained without a pre-deprivation hearing. *See, e.g.*, *Bello Chacon*, 2025 WL 3562666, at *4; *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322–1323 (W.D. Wash. 2025); *Rana v. Bondi*, 2:26-CV-00268-DGE, 2026 WL 445049, at *4 (W.D. Wash. Feb. 17, 2026). To the contrary, the Government's inability to locate and produce Petitioner's OREC supports that the risk of an erroneous deprivation in this case is particularly high.

The absence of procedural safeguards leads to a high risk of an erroneous deprivation of Petitioner's liberty. Accordingly, the Court finds that the second *Mathews* factor favors Petitioner. *See Doe*, 787 F. Supp. 3d at 1094.

ORDER ON HABEAS PETITION - 9

### 3. The Government's interest in civil detention without a hearing is low.

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing.

The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing on alleged ATD violation before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

As with its briefing on the other *Mathews* factors, the Government's argument on the third factor is premised on its incorrect mandatory detention argument. *See* Dkt. No. 7 at 8–9. Namely, the Government contends it has a "compelling" interest in enforcing mandatory detention. *Id.* Although the Government is correct that it has a strong interest in enforcing immigration laws generally, *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022), that interest is not necessarily threatened if a pre-deprivation hearing is required. *See Ramirez Tesara*, 800 F. Supp. 3d at 1137. That Petitioner's alleged violation—a missed appointment in March 2025—occurred months before it was acted upon in December 2025 undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable. Dkt. No. 9 ¶ 8; Dkt. No. 8-3.

For these reasons, the Court finds that the Government's interest in re-detaining Petitioner without a hearing is minimal: any administrative or financial burdens in providing Petitioner a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.

ORDER ON HABEAS PETITION - 10

The Court's review of the *Mathews* factors indicates that Petitioner's re-detention does not comport with due process.

### III.  REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition.  The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief."  *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013).  "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require."  *Id*. (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)).  "Declaratory and injunctive relief are proper habeas remedies."  *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release.  *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").  Furthermore, as explained in this order, due process requires that Petitioner receive notice and an opportunity to be heard before he may be re-detained for alleged release violations.  *See, e.g.*, *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *9 (N.D. Cal. Dec. 18, 2025) ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process.").  At any future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence.  *See Doe*, 787 F. Supp. 3d at 1089.

//

//

ORDER ON HABEAS PETITION - 11

## IV.   CONCLUSION

For these reasons, the Court GRANTS the habeas petition.  Dkt. No. 4.  The Court ORDERS as follows:

1)   Within ONE DAY of this order, Petitioner shall be released from custody on the same conditions of release previously imposed before his December 2025 arrest.

2)   Petitioner shall not be re-detained, absent urgent circumstances, without pre-deprivation notice and an opportunity to be heard in front an Immigration Judge.

3)   The Government shall file a declaration no later than THREE DAYS from the date of this order, documenting Petitioner's release in compliance with this order.

Dated this 24th day of April, 2026.

Kymberly K. Evanson
United States District Judge

ORDER ON HABEAS PETITION - 12